No. 8422.

Court of Civil Appeals of Texas.  San Antonio.
April 30, 1930.

Rehearing Denied May 28, 1930.

C. K. Quin, Jas. A. Harley, and Edwin G. Black, all of San Antonio, for appellant.

Church & Graves, W. S. Gideon, and W. M. Groce, all of San Antonio, for appellee.

FLY, C. J.

This is an action by appellee against appellant and her husband, S. L. Maloney, to recover $4,205.74, alleged to be due on furniture sold by appellee to appellant, for the foreclosure of a chattel mortgage, and appellee also obtained a writ of sequestration by which the furniture was seized.

The cause was submitted to a jury on a special issue as to the fraud of appellee in representing that the contract sued on was for the lease of the property with an option to purchase. The jury answered that there was no fraud; and judgment was rendered in favor of appellee for $8,773.54, principal, interest, and attorney's fees, and a lien was foreclosed on the certain personal property therein described. The recovery was against the personal and separate estate of appellant, as well as her interest in the community property of herself and husband.

The suit is based on a written instrument, evidencing a contract signed by appellant at the time that the property was obtained by her from appellee. In that contract is a promise that appellant would pay appellee $7,892, to be paid in monthly installments at the rate of $2,600. Title was reserved in the seller until the furniture was fully paid for, and the right to take possession of the property in case of default of payment of any installment. We copy the following from the contract:

"I or we do hereby consent and agree that the said property and the title to the same shall be and remain the property of the said G. A. Stowers Furniture Company, until fully paid for as above agreed, and if I neglect to pay said weekly or monthly installments when due (time being the essence of this contract,) said G. A. Stowers Furniture Company, or their agents, shall have the right and privilege at any time thereafter to demand and take away their said property, with or without legal process, and I waive any action for damages if said party or its agents should take same, and I agree to forfeit and lose all previous payments made thereon, the same being treated as rents. If I fail to pay any installment when due, or fail to insure said property as hereafter provided, it shall give the G. A. Stowers Furniture Company, or its agents, a right to declare all installments that would become due hereinafter, then due and payable. And I agree, and bind and obligate myself to keep said goods insured in some good and sol-

vent company until paid for, said policy to be payable to the G. A. Stowers Furniture Company, as its interest may appear or be, if I can do so; and if for any cause I cannot so insure for the use and benefit of G. A. Stowers Furniture Company, as above provided, then I, or we, agree and bind myself, or ourselves, to insure said property in my, or our name, and keep the same insured in some solvent company until said goods are fully paid for; and it is specially agreed and understood that in case of destruction of said goods while said policy or policies are in force by fire, or any cause, that said insurance shall inure to the benefit of said G. A. Stowers Furniture Company, or a sufficient sum thereof as will be necessary to pay off and discharge any indebtedness that I may be due the said G. A. Stowers Furniture Company, including my account and such interest as may be due thereon, and in case of legal proceedings to collect same, a reasonable amount as attorney's fees, and so much of said insurance is now here assigned to the said G. A. Stowers Furniture Company, and it shall have a perfect right to demand same, or sue for same, in case it cannot collect same without suit, or if it thinks itself insecure in recovering same. I agree, bind and obligate myself, or ourselves to pay eight per cent interest on all past due installments."

The instrument was properly construed by the trial judge as a sale, with power reserved to take possession of the property in case of failure to pay any installment of the purchase money.

A contract that personal property is sought to be sold and actually delivered, but should remain the property of the vendor until the purchase price is fully paid, is a chattel mortgage and can be registered as such. This is statutory, under the terms of article 5489, Rev. Stats., which provides that "all reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages." Clark v. West Pub. Co. (Tex. Civ. App.) 26 S. W. 527; Parlin, etc., Co. v. Davis' Estate (Tex. Civ. App.) 74 S. W. 951; Eason v. De Long, 38 Tex. Civ. App. 531, 86 S. W. 347; Crews v. Harlan, 99 Tex. 93, 87 S. W. 658, 13 Ann. Cas. 863. The instrument was duly filed and registered as a chattel mortgage about five days after its execution, showing the construction placed on the instrument by the seller of the furniture.

There was no evidence of fraud in the sale of the furniture. The sale was made in the same way as other furniture had been bought by appellant from appellee, and she had never before claimed that she had leased the furniture. She admitted, time and again, that she had bought the furniture. She at the time she signed the contract so construed it, for she said: "If I pay for the furniture it is mine, and if I do not it's yours." That shows she knew it was not a lease, and in a letter to one of the attorneys she spoke of the transaction as a sale and objected to paying interest, stating: "I can buy furniture anywhere without the additional interest." She bought the furniture from Robertson, salesman of appellee, and he swore she bought the furniture. He swore: "When I told her she would have to sign a contract I told her it was a contract to pay so much a month. She never at any time she was talking to me said anything about renting or leasing the furniture." That claim was never made until she was attempting to defeat the claim of appellee. Her conversation about the contract which she detailed was with a man who had since died, and, as said by the wisest of men: "The dead know not anything." Sanakien stated that nothing was said by appellant about a lease at the time she bought the rugs, but they were sold to her as to any other customer. She was contradicted by the contract and by the witnesses. Of course the contract carried its own construction, and no one could by his statements change it into some improbable document, not even one whose spirit has left the body and may be somewhere in "desolate windswept space in twilight land, in no man's land."

There was but one issue in the case, and that was as to whether appellee had induced appellant to sign a contract of purchase, when she thought she was signing a lease contract. The jury under the testimony found the only verdict permissible under the facts, that there was no fraud.

Appellant sought to set aside the verdict on the ground that the jury had been guilty of misconduct, in that they had discussed the effect their answer to the issue would have upon the controversy between the parties. The jury answered the issue presented to them by the court, and the discussion as to the effect of the answer was crude and altogether impertinent. The answer was not the result of their discussion. They showed by their testimony that they were convinced that appellee had not been guilty of fraud, and their conclusions as to the only answer they could under the facts have given, and their discussions, were vapid and puerile, and were idle vaporings. The discussion was not shown to have influenced the only verdict permissible under the evidence. Akers, a juror, said "when we signed the verdict we thought it was right." Ledman said they discussed the case and considered "the possibility of Mrs. Maloney bringing a suit against the Stowers Furniture Company, and then we assumed that we were not sent in there for that purpose and dismissed that idea, and decided we were only to decide on whether or not the Stowers Furniture Company had used unfair means in selling this bill of goods to this lady, and most of us came to a decision very soon, but there was one that could not see it right away.

The decision that we came to was that we agreed that we could not see how the Stowers Furniture Company had used unfair means in selling the furniture to this lady, that was my conclusion. We did not decide anything else, we had nothing else to decide."

The jury after considering the case, before and after they had reached the conclusion that there had been no fraud on the part of appellee, sent a request to the judge as to what effect the decision of the jury would have on the claim of appellant. Of course the trial judge informed the jury that was no concern of theirs and to answer the question. Juror N. D. Alexander, who was serving for the first time on a jury, and who wrote the note to the Judge, stated: "After the court instructed us that we were not to consider anything about the effect of our verdict, we then disregarded that and decided that the Stowers Furniture Company sold the furniture to her instead of leasing it to her."

Roger Perez, another juror, who was doubtless a novice in jury service, also swore that the jury answered the question as to fraud according to the evidence, but he would not have answered that way if he had known the consequences or effect.

William M. Malion, followed the suggestion of Perez and would not have answered as he did if he had known its effect, and that in the face of his declaration: "I did not see where there was any fraud in that way."

W. E. Lowe would not have answered the question as to fraud the way he did if he had known the consequences of the verdict and yet he stated: "The court submitted to us a question of whether or not there was any fraud practiced by the Stowers Furniture Company at the time they entered into the contract, and we answered that question 'no.' That was my answer to the question. I do not believe there was any fraud." And yet he would have not answered truthfully under the facts as he construed them, if he had known the effects of the answer.

Andrew Robuck stated that it was his opinion "that there had not been any fraud practiced by the Stowers Furniture Company." He stated: "After the court instructed us that we should not consider the effect of our answers to the questions, but just to answer the questions as they were submitted to us, we then went back and considered the case, but we did not consider the effect of our answers

and did not disregard the court's instructions."

Emil Salm, who was another juror, who would have disregarded his oath and the evidence, if he had known what the effect of the true verdict would be, stated: "That was my answer to the question and I believe the answer was correct. * * * I was of the opinion that there was no fraud practiced at the time the contract was entered into." The other jurors did not testify.

The testimony presents a sad commentary on a jury trial, and, if it was the common or usual procedure with juries in the consideration of cases, would shake the foundations of the jury system. However, we are disposed to think that it is an exception to the rule, and should not be used as an argument against the jury trial, so dear to the hearts of Americans and their English progenitors. We are disposed to believe that it was not corruption or disregard of the law that caused the discussion as to the effect of the verdict and the subsequent admission by several of the jurors that they would have foresworn themselves had they known the effect of the same. It was merely a lack of knowledge of the duties devolved upon them by their oaths under the instructions of the court. This conduct might possibly be averted by an instruction in terms that the jury should not inquire into or consider the effect of their answers on the judgment of the court, when a cause is submitted on special issues.

We do not think the court erred in refusing to grant a new trial on the ground of the misconduct of the jury. The only answer given was one independent of and without reference to the judgment of the court, and more than that it was the only answer that could have been honestly made under the facts. There was nothing to show that the agent who presented the contract to appellant had any power or authority to bind appellee. He merely gave his opinion, if the testimony of appellant is accepted as true, and that opinion was not acted upon by appellant afterwards, for her conduct and language invariably showed that she regarded the contract one of sale. The instrument itself shows a sale with the reservation of a lien, and no opinion could change its validity or object. But one legal construction can be placed upon the contract, and that construction was not a jury question.

The judgment is affirmed.